UNION TRUST CO. OF NEW YORK v. FORTY–SECOND ST., M. & ST. N. AVE. RY. CO. et al.

(Circuit Court, S. D. New York. June 16, 1910.)

1. STREET RAILROADS (§ 58*) — MORTGAGES — FORECLOSURE — CHARACTER OF FUNDS.

The transformation by a receiver in mortgage foreclosure against a street railway company of surplus income fund into cars does not change the fund's character.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

2. STREET RAILROADS (§ 58*)—MORTGAGES—FORECLOSURE—SURPLUS INCOME—APPLICATION.

In mortgage foreclosure proceedings against a street railway, determination of the rights of all creditors to a fund comprising the surplus income from receivership should be first raised before the special master.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

3. STREET RAILROADS (§ 58*)—MORTGAGES—FORECLOSURE.

On mortgage foreclosure and sale of a street railway, the purchaser should be required to pay cash to the amount of surplus income from receivership invested in cars sold as part of the road, though the decree permits him to turn over bonds as to the rest of the property, where the value of the bonds is indeterminate and question is raised as to whether the income is covered by the mortgage.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

In Equity. Foreclosure proceedings by the Union Trust Company of New York against Forty-Second Street, Manhattanville & St. Nich-

olas Avenue Railway Company and others. On motion to amend decree of foreclosure and sale. Amended decree directed.

Miller, King, Lane & Trafford, for complainant.

Bowers & Sands, Evarts, Choate & Sherman, and Kellogg & Rose, for defendants.

LACOMBE, Circuit Judge. In the inventory made and filed by the special master, in compliance with the fourth subdivision of the decree of November 30, 1909, there is included in the list of rolling stock, equipments, etc., the following items:

"Seventy-five electric convertible 'pay-as-you-enter' cars, Nos. 1,051 to 1,125, both inclusive, purchased on or about July 9, 1909, pursuant to an order of this court, dated June 8, 1909, at a cost of $350,365.50."

Question is raised as to whether these cars are covered by the mortgage, and complainant prays that the decree be amended so as to adjudicate that they are so covered.

When the receiver took possession of this road, it had no cars of its own, leasing such rolling stock as it required from the Third Avenue road. The receiver in time accumulated a sufficient sum from the operation of the road to buy 75 of these new model cars. It seemed a wise thing so to do, because it would improve the operation of the road while in his hands, and it was reasonable to expect that whoever bought the road, if sold, would need the cars, so that the money invested in them would not be subject to any risk of loss. If he had not bought these cars, the receiver would now have this $350,-365.50 on deposit in some bank, or trust company, as surplus income during receivership, to be marshaled and distributed according to the principles of equity. The transformation of the money into cars has in no way changed its character, and for convenience of distribution it should now be retransformed into cash, so that, if not covered by the mortgage, and thus appropriated to the creditors secured by that mortgage, it may be distributed among whatever creditors may be entitled to share in it.

The question whether or not surplus income of receiver is covered by the mortgage is a doubtful one, which should not be decided in any summary manner. Notice of this motion has been given to all persons who have appeared in the proceeding; but this does not include the general body of creditors, who have had no intimation that any adjudication affecting their rights to receiver's surplus income is now in contemplation. The determination of the rights of all persons to that fund should be raised first before the special master, who will be able to provide for giving proper notification to such persons as have filed claims.

It is, of course, manifest that the best way to sell these cars is with the rest of the property as a unitary operating railroad fully equipped. From the proceeds of the sale the amount of the surplus income should be segregated and held as a separate fund until it may be determined to whom it should be distributed. Since the successful bidder is by the terms of the decree allowed to make good his bid by turning over bonds, and the value of such bonds is in-

determinate, the decree should be modified, so as to provide that cash should be paid, instead of bonds, to the amount of the surplus income.

The decree of November 30, 1909, should therefore be amended as follows:

(1) In subdivision 4, before the last paragraph, insert the following:

"The item of personal property described in the inventory as '75 electric convertible "pay-as-you-enter" cars, Nos. 1,051 to 1,125, both inclusive, purchased by the receiver on or about July 9, 1909, pursuant to an order of this court, dated June 8, 1909 at the cost of $350,365.50,' need not be sold as a separate item, but shall be included with the rest of the property. Provision for segregating the amount of receiver's surplus earnings, invested in said cars, and securing the same for future disposition will be found in subdivision, 11, infra, in this decree."

(2) In subdivision 11, after the fourth paragraph, insert the following:

"The successful bidder, irrespective of the amount which he may have deposited prior to bidding, shall in making good his bid pay in cash the sum of $350,365.50, being the amount of surplus income of the receiver invested in the 75 electric convertible cars referred to in subdivision 4 of this decree. The special master shall deposit this $350,365.50 as a separate fund to await distribution under further order of this court."

It is also prayed that the decree be amended, so as to provide for an additional inventory. There is no opposition, and the modification seems desirable. The decree should be amended, by inserting in the fourth subdivision, after the first paragraph, the following:

"In addition to the inventory filed on June 28, 1909, in conformity to the original decree, the special master shall prepare and file with the clerk of this court not later than ————, 1910, a supplemental inventory of the legislative and municipal grants to Forty-Second Street, Manhattanville & St. Nicholas Avenue Railway Company, which said inventory should also give a statement of the streets and avenues in which the railroads of the said railway company are located, and whether such tracks are adapted for the use of electric or horse cars, and a reference to the principal trackage rights, operating agreements, and contracts relating to said roads and tracks, and also a general statement as to the cables and ducts owned by the said railway company."

A further prayer to amend the decree by including in the property to be sold certain claims against the New York City Railway Company and its receivers is denied.

Let an amended decree be prepared and submitted for signature.